## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LORA LOWE, *an individual*,

          Plaintiff,

vs.

BOYNTON PROPERTY HOLDINGS, LLC
d/b/a COURTYARD MARRIOTT
BOYNTON BEACH, *a Florida limited liability company*,

          Defendant.

_____/

CASE NO.:

## **COMPLAINT**

Plaintiff, LORA LOWE (hereinafter "Plaintiff"), sues Defendant, BOYNTON PROPERTY HOLDINGS, LLC d/b/a COURTYARD MARRIOTT BOYNTON BEACH (hereinafter "Defendant"), for injunctive relief, attorneys' fees and costs, including but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 *et seq*. (hereinafter "AMERICANS WITH DISABILITIES ACT" or "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and alleges as follows:

### **JURISDICTION AND VENUE**

1. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343.

2. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 in that the hotel property at issue in this case is located in the Southern District of Florida.

## THE PARTIES

3. At all times material hereto, Plaintiff, LORA LOWE, was and is over the age of 18 years, *sui juris*, and a resident of the State of New York.

4. Plaintiff has at all material times suffered from a "qualified disability" under the ADA. Plaintiff has Multiple Sclerosis and uses a wheelchair for mobility purposes.

5. Defendant, BOYNTON PROPERTY HOLDINGS, LLC, is a Florida limited liability company, authorized to doing and doing business in this District; specifically, Defendant owns and operates the COURTYARD MARRIOTT BOYNTON BEACH, located at 1609 N Congress Ave., Boynton Beach, FL 33426 (referred to herein as the "Subject Property"). The Subject property is a hotel and therefore a place of public accommodation as defined by Titel III of the ADA.

6. Venue is proper in the Southern District of Florida in that the Subject Property is in Palm Beach County, Florida.

## COUNT I
## VIOLATIONS OF THE ADA

7. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

8. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

9. Congress specifically found, *inter alia*, that:[1]

    a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

---

[1] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

c. Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and,

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

10. Congress explicitly set forth the purpose of the ADA; to wit:[2]

(i) Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) Provide a clear, strong, consistent, enforceable standard addressing discrimination against individuals with disabilities; and,

---

[2] 42 U.S.C. § 12101(b) (1) (2) and (4).

(iii)    Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

11.    The congressional legislation gave places of public accommodation a time period of up to one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA.

12.    The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[3]

13.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[4]

14.    Upon information and belief, the Subject Property has begun operations, and/or has undergone substantial remodeling, repairs and/or alterations since January 26, 1992, and/or has sufficient income to make readily achievable accessibility modifications.

15.    Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[5]

16.    Additionally, as of March 15, 2012, the revised regulations implementing Title III of the ADA took effect, imposing significant new obligations on inns, motels, hotels and other "places of lodging," including a requirement that hotels "[g]uarantee that the specific accessible guest room reserved . . . is held for the reserving customer[.]" *28 C.F.R. §36.302(e)(1).*

---

[3] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).
[4] 29 C.F.R. Part 36.
[5] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

17. Plaintiff is a resident of New York. On February 2, 2024, Plaintiff's husband called the Subject Property to reserve a stay in an accessible guestroom, from February 24 through February 27, 2024. Plaintiff's husband knew from a prior stay in January 2023, that Room 109 was fully ADA compliant, including an ADA compliant roll-in shower, and met Plaintiff's accessibility needs. He spoke to "Alex," who on information and belief is the manager, and requested Room 109 specifically. He stressed that Room 109 was the only one known to meet Plaintiff's needs, and that unless it was blocked off and guaranteed for them, they would not make a reservation. Alex assured Plaintiff's husband that Room 109 would be blocked.

18. In addition, Plaintiff and her husband booked a second stay, from February 29, 2024, through March 1, 2024. Plaintiff's husband again stressed that for this second stay, the only room that would work for Plaintiff would be Room 109, and that Plaintiff required assurances that it would be blocked off and held during the second stay as well. Again, Alex assured him that Room 109 would be reserved and blocked off for the second stay, and would not be released to any other guest.

19. Defendant sent email confirmations stating that for both stays, an "accessible room with roll-in shower" was reserved.

20. During the first stay, from February 24 through February 27, 2024, Plaintiff was provided Room 109 as promised, which was fully accessible to her, and she had no issues.

21. Plaintiff and her husband then left for another part of Florida and returned to the Subject Property for their second stay, on February 29, 2024.

22. They checked in and were given room cards, which they assumed were for Room 109, since they were assured that Room 109 was blocked and held for this stay. But when they

arrived at the room, the key card would not work. Only then did they look at the paper keycard holder and see that it was for Room 107.

23. Plaintiff and her husband went to Room 107, but it was not accessible to her; most obviously, there was a transfer shower that was too small and not ADA complaint. They returned to the front desk, but Alex was not there. They were told that Room 109 was given to someone else. Alex then arrived and argued that Plaintiff and her husband "knew" there were no guarantees that Room 109 would be available (notwithstanding that the law required exactly that – a guarantee that the specific accessible room reserved would be held and available – and even though Plaintiff was specifically told that the room was blocked for this reservation.

24. Furthermore, as noted, the reservation confirmation for both stays – including the second stay from February 29, 2024, through March 1, 2024 – specifically confirms a reservation of a "mobility accessible room with roll-in shower." Room 107 has an ADA non-compliant transfer shower (as described in more detail below). As such, in addition to the fact that Room 107 was in physical violation of the ADA, Defendant also failed to block and hold the type of accessible room for which it took a reservation.

25. Plaintiff's husband then drove to multiple hotels looking for somewhere to stay with an ADA compliant roll-in shower but could not find any. As a result, Plaintiff was unable to use the bathing facilities.

26. Defendant violated 28 C.F.R. §36.302(e)(1) by taking a confirming reservations for an accessible room with roll-in shower, and in addition specifically confirming in person that Room 109 would be available for Plaintiff during the second stay, and then providing neither an accessible room with roll-in shower, nor Room 109, when Plaintiff and her husband arrived on

6

February 29, 2024. Worse, "Alex" argued with Plaintiff and her husband that "they knew" the reserved room was not guaranteed to be available – even though federal law required exactly that.

27. In addition, the room to which Plaintiff was assigned on February 29, 2024, was not ADA compliant. Specifically, Room 107 had a transfer shower in which the glass door cut into required minimum floor space and did not have the type and position of transfer chair required by law. There were also incorrect grab bars, incorrect fixture heights, and unwrapped pipes. This is not intended as a complete list of ADA and ADAAG violations in Room 107 or at the Subject Property. All violations applicable to Room 107 and the Subject Property will be set forth within Plaintiff's expert disclosures and report following inspection made pursuant to Fed. R. Civ. P. 34.

28. Plaintiff has visited the Subject Property in the past (prior to the issues raised in this case, and intends to visit the Subject Property again in the future (upon Defendant's compliance with an Order of this Court requiring that Defendant remedy the subject ADA violations), in order to utilize goods, services, facilities, privileges, advantages and/or accommodations offered at the Subject Property; however, in light of her disabilities, unless and until the Subject Property is brought into compliance with the ADA and its implementing regulations, Plaintiff will remain unable to fully, properly, and safely access the Subject Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

29. As a result of the foregoing, Defendant has discriminated against Plaintiff and others with disabilities, by denying full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property. Defendant's discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq.*, as well as *28 C.F.R. §36.302(e)(1)*.

30. These violations will continue unless and until Defendant is compelled by this Court to remove all physical barriers upon the Subject Property which violate the ADA and ADAAG, and correct all reservation system violations, including but not limited to those specifically set forth herein, and to make the Subject Property, accessible to and usable by persons with disabilities.

31. This Court is vested with authority to grant injunctive relief, including entry of an Order requiring alteration and modification of the Subject Property, and/or alteration and modifications to Defendant's policies and procedures, to make the Subject Property readily accessible to and useable by individuals with disabilities to the extent required by law.

32. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorneys' fees, costs, and litigation expenses, all of which are recoverable against the Defendant.[6]

## COUNT II
## VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW

33. Plaintiff re-avers the allegations set forth above as though fully set forth herein.

34. The New York State Human Rights Law provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation…. because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … [7]

---

[6] 42 U.S.C. §§ 12205, 12117
[7] NYS Exec. Law § 296 (2)(a).

35. Plaintiff's reservation was made from inside New York when Defendant confirmed that Plaintiff had reserved an accessible room with roll-in shower for her February 29, 2024, through March 1, 2024, reservation.

36. This was an intentional or negligent misrepresentation of fact that violated Plaintiff's rights under the ADA, *28 C.F.R. §36.302(e)(1)*, and was made to Plaintiff (or to a person acting on her behalf) while she was located in New York, and thus violated N.Y. Exec. Law §297.

37. Plaintiff has been damaged and will continue to be damaged by this discrimination as more fully set forth above and, in addition to injunctive relief, seek judgment pursuant to N.Y. Exec. Law §297, including damages pursuant to §297(9) thereof.

WHEREFORE, Plaintiff, LORA LOWE, respectfully requests that this Court enter judgment in her favor, and against Defendant, as follows:

a. A declaration that the Subject Property owned, leased, operated, and/or controlled by Defendant is in violation of the ADA;

b. An Order requiring Defendant to alter their facilities and amenities to make them accessible to and useable by individuals with disabilities as required by Title III of the ADA;

c. Temporary and permanent injunctive relief enjoining Defendant from continuing its discriminatory practices, including the requirement that Defendant permanently implement policies, practices, procedures, including online content, consistent with the mandates of the 2010 ADAAG Standards as to its reservation systems and practices;

  d. An Order issuing a permanent injunction ordering Defendant to close the Subject Property and cease all business until Defendant remove all violations under the ADA, including but not limited to the violations set forth herein;

  e. An award of compensatory damages deemed just and appropriate pursuant to NYSHRL and NYCHRL, to Plaintiff;

  f. An award of reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff; and

  g. Such other and further relief that this Court deems just, necessary and proper.

DATED this **27th** day of **March,** 2024.

        Respectfully Submitted,

        **LAW OFFICES OF NOLAN KLEIN, P.A.**
        *Attorneys for Plaintiff*
        5550 Glades Road, Suite 500
        Boca Raton, FL 33431
        PH: (954) 745-0588

        By: */s/ Nolan Klein*
        NOLAN KLEIN, ESQ.
        Florida Bar No. 647977
        klein@nklegal.com
        amy@nklegal.com